**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

---------------------------------------------------
:
LEGO JURIS A/S and LEGO        :
SYSTEMS A/S,                   :
                               :
                  Plaintiffs,  :     Civil Action No.
                               :
      – against –              :
                               :
DIGITAL BLUE INCORPORATED,     :     **JURY TRIAL DEMANDED**
                               :
                  Defendant.   :
                               :
---------------------------------------------------

## COMPLAINT

Plaintiffs LEGO Juris A/S and LEGO Systems A/S (collectively, "LEGO" or

"Plaintiffs"), by their attorneys, Fross Zelnick Lehrman & Zissu, P.C., for their

complaint against defendant, Digital Blue Incorporated ("Digital Blue" or

"Defendant"), allege:

## NATURE OF THE ACTION

1.  This action arises out of Digital Blue's unauthorized use of Plaintiffs'

famous LEGO trademarks and trade name, in violation of Plaintiffs' rights under the

Federal Trademark Act, common law, and Georgia state law, as well as in breach of a

license agreement between LEGO and defendant Digital Blue.

2.      Accordingly, Plaintiffs bring this action for trademark infringement, false designation of origin and dilution under §§ 32(1), 43(a) and 43(c) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), and for substantial and related claims of unfair competition, dilution, and unfair business practices arising under the laws of the State of Georgia and breach of contract arising under the laws of Denmark.

## JURISDICTION AND VENUE

3.      Jurisdiction is based upon § 39 of the Lanham Act, 15 U.S.C. § 1121, upon 28 U.S.C. §§ 1331, 1338(a) and (b), 1367(a), and under principles of supplemental jurisdiction.  Venue arises under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claim occurred in this judicial district, the Defendant is located in this judicial district, and Defendant has consented to venue in this court.

## PARTIES

4.      Plaintiff LEGO Juris A/S is a corporation organized and existing under the laws of Denmark, with its principal place of business located at Koldingvej 2, DK-7190 Billund, Denmark.  LEGO Juris A/S is the registered owner of the trademark LEGO and related trademarks for toys and related goods and services in the United States.

5.      Plaintiff LEGO Systems A/S is a corporation organized and existing under the laws of Denmark, having its principal place of business at Havremarken (Bygning 97-20), DK-7190 Billund, Denmark.

6.      Plaintiffs are members of The LEGO Group, a group of affiliated companies, which produces and distributes LEGO brand toys and related goods and services through its own entities and independent licensees.

7.      On information and belief, Defendant is a corporation existing under the laws of the State of Delaware, having its principal place of business at 2030 Powers Ferry Rd. SE, Ste 360, Atlanta, GA, 30339.  Defendant is a developer of interactive youth electronics products and software and is a licensee for major entertainment brands.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs' Rights in the LEGO Marks

8.      For many decades, Plaintiffs and their affiliates or their predecessors (collectively hereinafter "The LEGO Group"), have used of the LEGO mark in the U.S. on construction toys made and sold by them.  Their use of the LEGO mark has been extensive, exclusive and continuous.

9.      The trademark LEGO is among the best-known trademarks in the U.S. and around the world, due in part to decades of extensive use and advertising, which

prominently depicts the mark LEGO on all products, packaging, displays, advertising, and promotional materials.  Virtually all parents and children in the U.S., and likely throughout the world, are familiar with the LEGO name and mark, and with LEGO products.  LEGO products include construction toy sets featuring plastic bricks with cylindrical studs on top and tubes on the bottom to help the parts interlock.  These sets often include small plastic figurines (the "LEGO Minifigure"). The LEGO Minifigure is also sold separately.  Both the LEGO bricks with studs and the LEGO Minifigure are extremely famous.  The LEGO Minifigures are offered with a wide variety of painted-on clothing, as well as hats and accessories. These depict people who can live, work, play and ride in the buildings, landscapes and vehicles that children build from LEGO construction sets. Animated cartoon versions of the LEGO Minifigures also are characters in LEGO video movies and LEGO video games.  LEGO Minifigures are also popular as collectibles for adults.

10.     The LEGO Group has expanded its use of the trademark LEGO, including its famous logo featuring the word LEGO on a red square background (collectively hereinafter, the "LEGO Marks") to include many goods and services other than toys, such as educational computer software, computer games, pens, watches, play tables, board games, lunch boxes, rubber erasers, refrigerator magnets, backpacks, clothing, books, storage furniture, theme parks, retail store services, and a

cable TV channel.  The LEGO Group is also involved with youth-focused

philanthropic ventures under the LEGO Marks, such as the LEGO Children's Fund,

which extends support to organizations that support innovative projects and

programming to cultivate a child's exploration of personal creativity and problem-

solving.  The LEGO Group also maintains websites under the domain names

LEGO.COM, LEGOEDUCATION.COM and LEGOCHILDRENSFUND.COM.

    11.    Plaintiff LEGO Juris A/S is the owner of the right, title and interest in

and to numerous U.S. registrations for the LEGO Marks (collectively, the "LEGO

Registrations"), including but not limited to the following:

| Mark | Reg. No. | Reg. Date | Class: Services/Goods |
|------|----------|-----------|------------------------|
| **LEGO** | 1,018,875 | 08/26/75 | 28 - Toy building blocks and connecting links for the same, sold separately and as kits for construction of toy houses, buildings, household furnishings, robots, doll figures and vehicular toys |
| | 1,026,871 | 12/9/75 | 28 - Toy building blocks and connecting links for the same, sold separately and as kits for construction of toy houses, buildings, household furnishings, robots, doll figures and vehicular toys |
| **LEGO** | 1,535,046 | 04/18/89 | 9 – Computer peripherals, computer programs and plastic building units, sold as a unit for teaching principles of science, design, mathematics and engineering |

| Mark | Reg. No. | Reg. Date | Class: Services/Goods |
|------|----------|-----------|----------------------|
| *LEGO* | 2,060,284 | 05/13/97 | Various goods and services in Classes 6, 9, 14, 16, 18, 20, 21, 25, 28, 41 and 42, including:<br><br>9 - "computer accessories, namely, computer cables, interface boxes used to connect model robots, model vehicles or other motorized building set constructions to a computer, through which the computer operator controls them"<br><br>41 - "conducting workshops for instruction in the use of computer software and educational toys in teaching" |
| **LEGO** | 2,189,528 | 09/15/98 | 9 – Computer game software |

| Mark | Reg. No. | Reg. Date | Class: Services/Goods |
|------|----------|-----------|------------------------|
| **LEGO** | 3,440,698 | 06/03/2008 | 9 - educational resources for teachers and educators, namely downloadable computer software for design and construction of construction toys; downloadable images for use as computer wallpaper and screensavers; downloadable computer games; educational resources for teachers and educators, namely downloadable computer software for uploading images of design and construction of construction toys<br><br>35 - Retail store services and online retail services, both featuring toys, construction toys, games, video games, movies, clothing, clocks, watches, books, gifts, backpacks, pens, furniture and key chains<br><br>38 - Providing online electronic bulletin boards for transmission of messages among computer users concerning toys, construction toys and robotics toys<br><br>41 - Providing online fan-club services for users of construction toys via the Internet; providing online educational and entertainment services, namely interactive games, activities, stories, comic books, information in the fields of education and entertainment, on-line computer games, video, audio and images, all featuring toys, cartoons, construction toys or robotic toys; educational and entertainment resources, namely articles and demonstrations for parents and educators, all available via the Internet, entertainment services, namely conducting parties |

| Mark | Reg. No. | Reg. Date | Class: Services/Goods |
|---|---|---|---|
| | 3,440,699 | 06/03/2008 | 9 - educational resources for teachers and educators, namely downloadable computer software for design and construction of construction toys; downloadable images for use as computer wallpaper and screensavers; downloadable computer games; educational resources for teachers and educators, namely downloadable computer software for uploading images of design and construction of construction toys<br><br>35 - Retail store services and online retail services, both featuring toys, construction toys, games, video games, movies, clothing, clocks, watches, books, gifts, backpacks, pens, furniture and key chains<br><br>38 - Providing online electronic bulletin boards for transmission of messages among computer users concerning toys, construction toys and robotics toys<br><br>41 - Providing online fan-club services for users of construction toys via the Internet; providing online educational and entertainment services, namely interactive games, activities, stories, comic books, information in the fields of education and entertainment, on-line computer games, video, audio and images, all featuring toys, cartoons, construction toys or robotic toys; educational and entertainment resources, namely articles and demonstrations for parents and educators, all available via the Internet; entertainment services, namely conducting parties |

| Mark | Reg. No. | Reg. Date | Class: Services/Goods |
|------|----------|-----------|------------------------|
| **LEGO** | 2,245,652 | 05/19/1999 | 28 - construction toys; toy construction blocks and connecting links therefor; toy construction kits; toy figures; toy vehicles; toy animals; toy foliage; toy cranes; toy road plates; kits for assembling toy Christmas tree decorations; children's multiple activity toys; baby multiple activity toys; toy building blocks; infant's rattles; dolls; doll house furnishings; accessories for dolls; playsets for dolls; playset buildings; educational games; toy model train sets; toy railroad tracks; bath toys; ride-on toys; push toys; pull toys; infant's stacking toys; toy furniture; toy friction motors for toy vehicles; toy electric motors; board games; jigsaw puzzles; educational construction toys sets comprising gears, pulleys, beams, wheels, connectors, electric motors, sensors and/or pneumatic cylinders, with or without computer software for assembling and controlling the construction toys; construction toy sets and carrying cases or storage cases sold as a unit; motorized toy model construction kits with or without remote controllers |

12.    In accordance with §§ 7(b) and 22 of the Lanham Act, 15 U.S.C.

§§ 1057(b) and 1072, the LEGO Registrations constitute constructive notice to

Defendant of Plaintiff LEGO Juris A/S's ownership of these trademarks.  All of these

registrations are valid, subsisting, and owned by Plaintiff LEGO Juris A/S.

13.    LEGO's Registration Nos. 1,018,875, 1,026,871, 1,535,046, 2,060,284,

2,189,528 and 2,245,652, among other LEGO Registrations, have achieved

incontestable status and accordingly are conclusive evidence of the validity of and

LEGO's exclusive right to use the marks shown therein in commerce as provided by

§§ 15 and 33(b) of the Federal Trademark Act, 15 U.S.C. §§ 1065 and 1115(b).

14.    LEGO also owns common law rights in the LEGO Marks in connection

with the goods and services identified in the LEGO Registrations and in connection

with related goods and services under the LEGO Marks.  LEGO is also the owner of

the trade name LEGO or names beginning with LEGO under which it has offered for

sale, promoted, and advertised Plaintiffs' products in the United States.

15.    Based on the LEGO Group's extensive and continuous use of the LEGO

Marks and extensive sales of goods and services under the LEGO Marks, the LEGO

Marks became famous in the minds of the relevant purchasing public, particularly

among children and their parents, prior to 2008.

### The Master License Agreement Between LEGO and Digital Blue

16.    LEGO entered into a Master License Agreement (the "MLA") with

Digital Blue effective October 20, 2008.  LEGO incorporates the MLA and its terms

into the Complaint, but has not attached it hereto because the MLA is confidential.

Under the MLA, LEGO granted Digital Blue a non-exclusive right to use a set of

LEGO trademarks and intellectual property associated therewith to design, produce,

distribute, market, promote and sell "Digital Still Cameras, Digital video cameras,

Digital Imaging Products, Web Cams, MP3 Players, Media Players, Interactive

Digital Devices, CD Boom Box w/radio and MP3, Alarm Clock Radio, Accessories

(Headphones, cases, etc), all others to be approved on a case by case basis."  Master

License Agreement, October 20, 2008, at Exhibit 1.  All the products ultimately

produced under the MLA were in the shape of a LEGO brick, made with a LEGO

Minifigure of otherwise made with LEGO building elements to enhance their appeal

to children and teenagers.

### A.    The MLA Provisions Regarding Term, Final Accounting Statement and Sell-Off Period Royalties

17.    The term of the MLA was "August 1, 2008 through December 31,

2011," and gave Digital Blue "a two-year renewal option based on performance:

January 1, 2012 through December 31, 2014 [based on achievement of Eighty (80%)

percent of sales projections in calendar year 2011], and if LICENSEE is otherwise in

good standing" (the "Term").  *Id.*

18.    Article 17 of the MLA, entitled "Effect of Termination" contained the

following provisions regarding a final accounting statement and sell-off period

royalties:

> Upon termination of this Agreement LICENSEE agrees to cease all
> manufacture of the LICENSED PRODUCTS and further agrees,
> immediately upon termination or expiration of this Agreement, to
> prepare a final accounting statement which will include all the
> LICENSED PRODUCTS in process. . . . LEGO has the option to buy all

11

or any of such LICENSED PRODUCTS included in the final accounting, at the best price offered to third parties.  All sales of the LICENSED PRODUCTS shall cease until LEGO has given its written reply to whether it will exercise that option.  If LEGO does not exercise the option (or only exercises it partially) within sixty (60) days of termination then LICENSEE has the non-exclusive right to sell such remaining LICENSED PRODUCTS for a further period of six (6) months, under the condition, however, that the LICENSED PRODUCTS can only be sold to LICENSEE's regular distributors and never for liquidation purposes.  All applicable provisions of this Agreement, including the obligation to pay ROYALTY, shall continue to be in force for such period.

Unless LICENSEE and LEGO before the expiry date of this Agreement mutually agree in writing to make an extended License Agreement, any LICENSED PRODUCTS remaining in stock at LICENSEE or its agents, retailers and/or distributors after the selling-off period shall be destroyed within one (1) calendar month after the expiry of the selling-off period at the sole cost of LICENSEE unless the Parties have made other agreement concerning disposal of a possible surplus stock of LICENSED PRODUCTS.  LICENSEE undertakes to document the destruction of all such stocks by a statement hereof at the latest forty-five (45) calendar days after the expiry date of the selling-off period.  Alternatively, LICENSEE can choose to hand over any such stocks to LEGO free of charge.

*Id.* at Art. 17.2.

> ### B.   The MLA Provisions Regarding LEGO's
> ### Approval of Digital Blue's Products

19.    The MLA contained a number of provisions regarding LEGO's right to

approve and pre-approve any product sold under the MLA.  For example:

20.     Article 4.1 of the MLA required that LEGO "approve the DESIGNS and quality of all LICENSED PRODUCTS and the related ADVERTISING MATERIALS before the launch and marketing of the LICENSED PRODUCTS."

21.     Article 4.2.a of the MLA required Digital Blue to provide LEGO with "accurate and colored DESIGNS of the LICENSED PRODUCTS and the related ADVERTISING MATERIALS . . . ."

22.     Article 4.2.b of the MLA required Digital Blue to provide LEGO with "two (2) samples and/or prototypes of the LICENSED PRODUCTS and the related ADVERTISING MATERIALS" for LEGO's "written approval or disapproval."

23.     Article 4.2.c of the MLA required Digital Blue to commence commercial production of a product only after receiving LEGO's approval of the product.

24.     Article 4.2.c.I of the MLA required Digital Blue to "submit to LEGO, at LICENSEE's expense, fifteen (15) samples of each LICENSED PRODUCT/sku and the related ADVERTISING MATERIALS, where appropriate, of each style and of each color of the PRODUCT, immediately after the first production run thereof."

25.     Article 4.2.c.I of the MLA required Digital Blue to do the following: "During each Product Year, Licensee shall also deliver to LEGO, free of charge, twelve (12) pieces of each PRODUCT/sku, related display materials for LEGO

advertising and LEGO promotional purposes, and one complete set of samples with display materials for each LEGO showroom wherever located."

26.    Article 4.2.d of the MLA required that Digital Blue's "[u]se of the LICENSED PRODUCTS or the ADVERTISING MATERIALS shall not take place before LICENSEE has received written LEGO approval. . . . If LICENSEE has not received the approval or disapproval from LEGO as set forth above, such use or documents, information or other materials shall be deemed disapproved:  'not approved'."

27.    Article 4.2.f of the MLA required:  "[I]n case of LEGO demanding the commercial production, marketing and/or selling of the LICENSED PRODUCTS be ceased, or the LICENSED PRODUCTS be recalled according to Article 4.2.e, LEGO shall inform LICENSEE of the reason, and LICENSEE shall rectify the error within an additional period of ten (10) working days after having received the LEGO reasons."

28.    Article 4.3 of the MLA required:  "During the process described in Article 4.2.a - 4.2.f, LICENSEE will at its own cost forward a bill of material and samples to LEGO of all materials chosen to be used for the commercial production of the LICENSED PRODUCTS for LEGO approval or disapproval of quality . . . ."

C.      **The MLA Provisions Regarding Infringements and Indemnification**

29.      Article 7.6 of the MLA required:  "[I]n case of infringements caused directly or indirectly by LICENSEE, . . . LICENSEE shall take action to stop such infringement to the extent satisfactory to LEGO.  LICENSEE shall bear its own costs as well as any LEGO costs in that connection."

30.      Article 8.2 of the MLA required:  "LICENSEE shall indemnify LEGO and other companies within The LEGO Group for any costs, claims, losses, or expenses arising out of, or in connection with, the LICENSED PRODUCTS or ADVERTISING MATERIALS, or the sale or use thereof, including without limitation, any claims for . . . trademark, . . . design, . . . or other intellectual property infringement, . . . for unfair competition, breach of contractual obligation, . . . or breach of any legal requirement of all applicable U. S. federal, state, and local laws and of all applicable laws and regulations of jurisdictions outside the United States."

**Digital Blue's Wrongful Conduct**

31.      During the three-and-a-half year Term, Digital Blue produced and distributed a set of licensed products under the LEGO Marks, including a 2-gigabyte USB stick (a computer accessory used to store data) made from a LEGO Minifigure. In that product, the genuine LEGO Minifigure functioned as a container for the

electronic components and enhanced the appeal of the product for children.  The

product, outside of its packaging, is shown here:



32.     During the Term, Digital Blue failed to make required royalty payments

in a timely manner.  At the time of filing, Digital Blue has failed to pay LEGO at least

$121,128.76 in outstanding royalties, the amount due from Q1 and Q2 of 2011 and the

interest associated therewith.

33.     Certain royalty payments due under the MLA remain outstanding.

34.     The two-year renewal option contemplated in Exhibit 1 of the MLA was

never exercised either in whole or in part.

35.     Nor did LEGO and Digital Blue mutually agree in writing to make an

extended license, as contemplated in Article 17.2 of the MLA.

36.     Accordingly, the MLA expired on December 31, 2011.

37.     In February 2012, in accordance with the option to buy back licensed product in the process of being manufactured, LEGO offered to buy back from Digital Blue a large number of LEGO Minifigure figurines that Digital Blue had purchased from LEGO in 2011 to use to make licensed products.

38.     Digital Blue chose not to sell back the licensed products in process.

39.     On or about that time, LEGO expressly explained to Digital Blue that, pursuant to the terms of the MLA, Digital Blue would not be permitted to make new products with these figurines in 2012.  On August 20, 2012, Digital Blue made assurances to LEGO personnel that Digital Blue had no inventory, parts, or works-in-progress of LEGO products.

40.     The time period in which Digital Blue was permitted to sell remaining licensed products expired pursuant to Article 17.2 of the MLA, prior to November 2012.

41.     The time period in which Digital Blue had to destroy and document the destruction of any remaining licensed products, or to hand over the remaining products to LEGO, expired pursuant to Article 17.2 of the MLA, prior to November 2012.

42.     In November 2012 – more than ten months after the Term expired, and months after the sell-off period and the deadline to destroy any existing licensed goods

both expired – LEGO became aware of LEGO-brand 8 gigabyte USB drives made

from LEGO Minifigures (the "Infringing Products") manufactured and/or distributed

by Digital Blue for sale in a retail store.  Images of these items being offered for sale

are here:





43.     LEGO immediately contacted Digital Blue, in an email dated November 14, 2012, informing the Defendant, *inter alia*, that (i) the Infringing Products were being offered beyond the Term and sell-off period of the MLA at a retail location, (ii) the Infringing Products – which were 8-gigabyte drives, not 1-gigabyte drives – had not been approved for production, and (iii) LEGO had not been informed that the Infringing Products were going to market.  In this email, LEGO demanded proof that the "USB drives were produced and approved by the LEGO Group prior to the expiration of the [MLA] or the sell-off period;" and requested information regarding the quantity of the Infringing Goods.  LEGO provided Digital Blue with a deadline of November 20, 2012 to respond.

44.     Digital Blue responded to the November 14 email but failed to provide such evidence.

45.     After November 14, 2012 and before December 24, 2012, LEGO made numerous additional attempts to resolve the matter.  Each failed.

46.     On December 24, 2012, LEGO emailed Digital Blue demanding that it:

  a.  immediately cease and desist any and all production and sale of the [Infringing Products].
  b.   provide LEGO with the exact number of [Infringing Products] which have already been produced.
  c.  provide LEGO with the exact number of [Infringing Products] which have been sold into retail, and a list of the retailers.
  d.  return to us all [Infringing Products] which are still in stock at its production facilities and warehouses which have not yet been shipped to retail.
  e.   IMMEDIATELY pay all outstanding royalties which are all seriously overdue from the now expired license agreement, as well as royalties for the [Infringing Products].

47.     Upon information and belief, Digital Blue did not provide any response to LEGO to the December 24 email or take any remedial action.

48.     In violation of Article 4 of the MLA, Digital Blue manufactured and/or distributed the Infringing Products without seeking or obtaining the necessary approvals from LEGO or providing LEGO with the appropriate materials, including but not limited to failing to:

  a.  Submit the Infringing Products for approval prior to launch and marketing (Article 4.1);

20

    b. Provide designs of the Infringing Products with approval form (Article 4.2.a);
    c. Provide samples/prototypes of the Infringing Products for approval (Article 4.2.b);
    d. Submit samples of each Infringing Product/sku and related materials immediately after the first production run (Article 4.2.c.I);
    e. Submit samples of each Infringing Product/sku and related materials during the first production year (Article 4.2.c.I);
    f. Obtain written approval prior to use (Article 4.2.d);
    g. Rectify the infringement within ten days of receiving LEGO's November 14 demand (Article 4.2.f); and
    h. Forward a bill of material and sample of all materials to be used in the commercial production (Article 4.3).

49.    In violation of Article 17 of the MLA, Digital Blue failed either to destroy merchandise made pursuant to the MLA that was in stock at licensee, its agents, retailers and distributors after the selling-off period and submit to LEGO documentation of such destruction or to hand over such merchandise to LEGO in a timely fashion (Article 17.2).

50.    In violation of Article 17 of the MLA, Digital Blue sold product to retailers beyond the 6-month sell-off period, upon information and belief (Article 17.2)

51.    In violation of Article 17 of the MLA, Digital Blue failed to pay royalties on goods sold during the sell-off period (Article 17.2).

52.    In violation of Article 17 of the MLA, Digital Blue failed to provide a final accounting statement (Article 17.2) to LEGO.

53. In violation of Article 9 of the MLA, Digital Blue failed to pay royalties to LEGO on goods sold during the Term of the MLA (Article 9).

54. In violation of Article 7.6 of the MLA, Digital Blue failed to take action to stop the infringing activity and to bear Plaintiffs' cost in connection to the infringing activity.

55. In violation of Article 8.2, Digital Blue has failed to indemnify Plaintiffs for the costs associated with the infringing activity.

56. Defendant's acts described herein were intentional, willful, and done to trade off and benefit from the overwhelming recognition and popularity of Plaintiffs' LEGO Marks, and were done in violation of the MLA. The natural and foreseeable result of Defendant's conduct is to deprive Plaintiffs of their rights under their famous and valuable LEGO Marks and the benefits therefrom, including the exclusive right to use or license the LEGO Marks, to deprive Plaintiffs of goodwill in its LEGO Marks, and to impair Plaintiffs' relationship with current and prospective customers. Defendant's actions also have tarnished the reputation of Plaintiffs. In addition, Defendant's actions have the added effect of depriving Plaintiffs of material benefits and protections carefully negotiated between the parties and included in the MLA.

57. As a result of Defendant's conduct described above, Plaintiffs have lost the ability to control or determine how its marks can be used. Plaintiffs have suffered

and will continue to suffer irreparable harm if Defendant's conduct is not enjoined. Plaintiffs have no adequate remedy at law.

58.     Plaintiffs seek damages, injunctive relief, repayment of the amounts owing under the MLA, as well as attorney's fees and punitive damages.

## FIRST CLAIM FOR RELIEF
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114(1))

59.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

60.     Defendant's unauthorized distribution, marketing and sale of products and materials bearing some or all of the LEGO Marks, for which Plaintiffs own federal trademark registrations, is likely to cause confusion or to cause mistake, or to deceive Defendant's customers and the public as to the source or sponsorship of Defendant's products and services.  Consumers are likely to be misled into believing that Defendant's products have been created by, sponsored by or are connected in some way in trade with Plaintiffs.

61.     The use by Defendant of the LEGO Marks has already irreparably damaged Plaintiffs by infringing their above-listed federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and will, unless

restrained, further damage Plaintiffs and impair the goodwill symbolized by Plaintiffs' marks.  Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

62.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

63.     Defendant's use of Plaintiffs' LEGO Marks constitutes the use of false designations of origin with respect to the origin of Defendant's products and services, by suggesting that they are connected with or sponsored by Plaintiffs.

64.     Defendant's aforesaid actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and have already irreparably damaged Plaintiffs and will, unless restrained, continue to so damage the Plaintiffs, their goodwill and their licensing program, for all of which there is no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## DILUTION UNDER FEDERAL LAW
## (15 U.S.C. § 1125(c))

65.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

66.     Plaintiffs' LEGO Marks are extraordinarily famous and well known throughout the United States, having been used extensively by Plaintiffs for many years.  By reason of Plaintiffs' extensive use of these marks, they have become highly

24

distinctive of Plaintiffs' goods and services and are uniquely and exclusively associated with Plaintiffs, both at the present time and before Defendant's activities commenced.

67.     Defendant's commercial use of the LEGO Marks in connection with goods and services that are not controlled by, affiliated with or sponsored by Plaintiffs is likely to dilute the distinctive quality of Plaintiffs' famous LEGO Marks by lessening their capacity to exclusively identify and distinguish Plaintiffs and its goods and services.

68.     In addition, Defendant's failure to properly submit for approval the Infringing Goods, denying the Plaintiffs the opportunity to ensure sufficient quality and to attribute goods without such quality control to Plaintiffs by virtue of the use of the LEGO Marks, the LEGO Marks have been tarnished.

69.     On information and belief, the foregoing acts were done willfully and deliberately and with intent to reap the benefit of Plaintiffs' goodwill and dilute the distinctiveness of Plaintiffs' marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70.     At all relevant times when Defendant used the LEGO Marks in connection with its goods, 15 U.S.C. § 1125(c), as well as the anti-dilution statutes of

Georgia and certain other states, were in effect and Defendant had actual or constructive knowledge of these statutes.

71.     The aforesaid conduct is causing Plaintiffs to suffer irreparable injury and damage, and, unless restrained, will cause further irreparable injury and damage to Plaintiffs.  Plaintiffs has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**<u>UNFAIR COMPETITION UNDER O.C.G.A. § 23-2-55</u>**

72.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

73.     By reason of the aforesaid acts, Defendant has encroached, and continues to encroach, on the business of Plaintiffs by the use of similar marks, names or devices, with the intention of misleading the public, which is a fraud for which equity will grant relief pursuant to O.C.G.A. § 23-2-55.

74.     The aforesaid acts by Defendant were with knowledge and in willful disregard of Plaintiffs' prior rights in the LEGO Marks.

75.     Plaintiffs have suffered and continue to suffer injury as a direct and proximate result of Defendant's unfair competition in an amount of damages to be proven at trial.  Moreover, Defendant's aforesaid acts have irreparably harmed Plaintiffs and will continue to irreparably harm Plaintiffs unless enjoined by this Court, as a result of which Plaintiffs are without an adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICE UNDER O.C.G.A. § 10-1-372

76.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

77.     By reason of the aforesaid acts, Defendant has caused, and continues to cause, likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of its goods, and confusion and misunderstanding as to affiliation, connection or association between Plaintiffs and Defendant, in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

78.     Defendants' aforesaid acts were with knowledge and in willful disregard of Plaintiffs' prior rights in the LEGO Marks.

79.     Plaintiffs have suffered and continue to suffer injury as a direct and proximate result of Defendant's deceptive trade practice in an amount of damages to be proven at trial.  Moreover, Defendant's aforesaid acts have irreparably harmed Plaintiffs and will continue to irreparably harm Plaintiffs unless enjoined by this Court, as a result of which Plaintiffs are without an adequate remedy at law.

80.     Plaintiffs are entitled to an award of attorneys' fees under O.C.G.A. § 10-1-373, since Defendant has willfully engaged in the foregoing deceptive trade practices, knowing them to be deceptive.

## SIXTH CLAIM FOR RELIEF
## BREACH OF CONTRACT
## UNDER THE LAW OF DENMARK

81.     Plaintiffs repeat and reallege each of the allegations set forth in the paragraphs above.

82.     The MLA states that the law of Denmark applies. Defendant's actions are all in violation of the MLA and constitute material breaches of contract under Danish law.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

A.     That Defendant, and its officers, directors, servants, employees, agents, licensees, attorneys, successors, affiliates, parents, subsidiaries and assigns, and any and all persons in active concert or participation with them, who receive notice of such judgment, directly or otherwise, be temporarily, preliminarily and permanently enjoined from:

(i)     infringing Plaintiffs' LEGO Marks;

(ii)    using any of the LEGO Marks;

(iii)   using any colorable imitation or copy of the LEGO Marks in any manner on any goods or in connection with the distribution, sale and/or promotion of any goods and/or services;

(iv)    falsely describing or representing the origin of the Defendant's products and services and from misrepresenting and deceiving Defendant's customers and the public with respect to the existence of any connection between Plaintiffs and Defendant's products and services;

(v)    making false representations as to the ownership of Plaintiffs' LEGO Marks, including any such representations which are likely to create the impression that any of Defendant's goods originate with or are sponsored by or are in any way connected with Plaintiffs;

(vi)    unfairly competing with Plaintiffs by diluting Plaintiffs' LEGO Marks and from illegally appropriating Plaintiffs' rights in and to the same; and

(vii)    assisting or authorizing any third party to engage in any of the actions prohibited by paragraphs (i) – (vi) above;

B.    That Defendant be ordered to immediately cease the distribution, exhibition, advertisement, promotion and/or sale of any of its products or services bearing any of the LEGO Marks, or any other materials bearing copies of any of the LEGO Marks;

C.    That Defendant be ordered to deliver up for destruction all materials that include, depict, constitute, or bear any variation, reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' LEGO Marks, as well as all plates, negatives, masters

and any other items used in the making of such materials (including LEGO Minifigures);

D.     That Defendant be directed to make available, within thirty (30) days after entry of judgment, for Plaintiffs' review and inspection, all books and records and other documents concerning all transactions relating to any of Defendant's goods or services bearing any of the LEGO Marks, and any other materials that include, depict, constitute, or bear any variation, reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' LEGO Marks;

E.     That Defendant, at its own expense, be directed to recall from any distributors, retailers, vendors or others to whom it has distributed any goods bearing Plaintiffs' LEGO Marks, and any other materials that include, depict, constitute, or bear any variation, reproduction, counterfeit, copy, or colorable imitation of such marks, all such materials, and that Defendant destroy or deliver up to Plaintiffs for destruction all materials returned to it;

F.     That Defendant be directed to file with the Court and serve on Plaintiffs' counsel within thirty (30) days after entry of judgment, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the same;

G.     That Plaintiffs recover from Defendant all damages sustained by Plaintiffs, in consequence of Defendant's trademark infringement, unfair competition, false representations, false designations of origin, false descriptions, fraudulent representations, unfair methods of competition, unfair trade practices, dilution, and breach of contract and non-payment of royalties due and owing as described above, together with appropriate interest on such damages, and that in the case of damages resulting from infringement and dilution of Plaintiffs' rights and unfair competition with Plaintiffs under the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

H.     That Defendant be ordered to account for and disgorge and pay to Plaintiffs all the gains, profits, savings, and advantages realized by Defendant from its acts of trademark infringement, unfair competition, false designations of origin, false descriptions and representations, fraudulent representations, unfair methods of competition, unfair trade practices, dilution, and breach of contract, including, but not limited to, its failure to pay royalties due and owing as described above, and that in the case of damages resulting from infringement and dilution of Plaintiffs' rights and unfair competition with Plaintiffs under the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

I.     That Defendant pays Plaintiffs such punitive damages as the Court finds appropriate;

J.     That Plaintiffs have and recover from Defendants its costs of suit and reasonable attorney's fees incurred in connection with this action; and

K.     That Plaintiffs be granted such other and further relief as may be equitable and just.

Respectfully submitted this 20th day of March, 2013.

s/ Suzanne Werner
C. Suzanne Werner
  (Georgia Bar No. 321398)
Alston & Bird LLP
1201 West Peachtree Street NE
Atlanta, Georgia 30309-3424
Telephone: 404-881-7000
Fax: 404-881-7777
Email: suzanne.werner@alston.com

Deepro Mukerjee
Altson & Bird LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: 212-210-9400
Fax: 212-210-9444
Email: deepro.mukerjee@alston.com

*Of Counsel*:
John P. Margiotta
Leo Kittay
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Telephone: 212-813-5900
Email: jmargiotta@frosszelnick.com
Email: lkittay@frosszelnick.com

*Attorneys for Plaintiffs LEGO Juris A/S and LEGO Systems A/S*